UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA IMUS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-10-3785 |
| | § | |
| CIRCLE Y SADDLES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.      Introduction**

Pending before the Court is the defendant's, Circle Y Saddles, motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry No. 8). The plaintiffs, Brenda Imus and Gaits of Gold, Inc. ("GOG"), filed a response (Docket Entry No. 21), to which the defendant filed a reply (Docket Entry No. 26). After having carefully reviewed the motion, the responses and the applicable law, the Court grants the defendant's motion to dismiss pursuant to Rule 12(b)(6) based on the doctrine of judicial estoppel.[1]

**II.     Factual Background**

This case concerns the plaintiffs' allegations of breach of contract, trademark infringement and related claims. The plaintiffs asserted these claims after undergoing bankruptcies, even though the claims existed before they filed their bankruptcy petitions. Imus is a gaited horse trainer who founded GOG to produce and retail horse saddles and related equipment. In 2004, GOG coupled with an Amish saddle maker to produce the Imus 4-Beat™ Saddle. The demand for that saddle grew, and on February 1, 2007, the plaintiffs entered into a

---

[1] The defendant also moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), asserting that the plaintiffs lacked standing to bring their claims. The plaintiffs conceded their lack of standing in their response, and they now seek for their trustees to bring their claims. Accordingly, the Court will not address the defendant's Rule 12(b)(1) motion.

1 / 9

licensing and marketing agreement with the defendant, granting the defendant the sole right to produce, market and sell all licensed GOG equipment, including the Imus 4-Beat™ Saddle. Pursuant to that agreement, Imus was to receive five percent of the gross proceeds as a royalty for every licensed GOG product that the defendant sold. To date, Imus has received three royalty checks, totaling $6,000.00. On March 28, 2007, GOG entered into a credit agreement with the defendant, in which GOG agreed to pay for all goods that it purchased from the defendant. GOG eventually accumulated $50,945.00 in debt under that credit agreement.

On October 1, 2007, the defendant sent a letter to its dealers stating that it was temporarily discontinuing acceptance of orders for the Imus 4-Beat™ Saddle. That letter also advised that the defendant was now offering its "Trail Gaiter™ by Circle Y" saddle "to satisfy this ever-growing niche" and to "offset some of the problems associated with this transition" away from the Imus 4-Beat™ Saddle. On January 3, 2008, Imus sent the defendant a letter terminating their licensing agreement.

Imus and her husband filed their joint voluntary petitions for Chapter 7 bankruptcy on March 10, 2008.[2] In Schedule B of the Imus bankruptcy filing, filed under penalty of perjury, she did not list any of her legal claims against the defendant. On October 8, 2008, the bankruptcy court separated the couple's joint petitions. On November 20, 2008, the bankruptcy court converted Brenda Imus' Chapter 7 case to a Chapter 13 case. On February 24, 2009, she filed an amended petition and schedules, and she once again failed to disclose her claims against the defendant. However, Imus did list the $50,945.00 debt to the defendant incurred under their credit agreement on her original and amended Schedule F forms, and she sought to discharge that debt. On August 12, 2009, the bankruptcy court confirmed Imus' Chapter 13 bankruptcy plan.

---

[2] The Court takes judicial notice of the plaintiffs' bankruptcy filings. *See CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 249 n.3 (5th Cir. 2006) (citing *Missionary Baptist Foundation of Am. v. Huffman*, 712 F.2d 206, 211 (5th Cir. 1983)).

Additionally, GOG filed its voluntary petition for Chapter 7 bankruptcy on July 2, 2008. GOG did not list any claims against the defendant either, but GOG also listed the $50,945.00 debt to the defendant. On September 5, 2008, GOG's Chapter 7 Trustee made his report of no distribution, and the trustee closed GOG's bankruptcy case on September 8, 2008.

On October 13, 2010, the plaintiffs filed this suit, although they still had not disclosed their claims against the defendant to the bankruptcy court. On January 24, 2011, Imus amended her Chapter 13 schedule of assets to include her current claims against the defendant. On February 11, 2011, Imus' trustee sent her bankruptcy attorney a letter stating that the lawsuit is a bankruptcy estate asset and authorizing Leslie Wm. Adams & Associates to continue litigation on behalf of the bankruptcy estate. On February 12, 2011, GOG's Chapter 7 trustee filed an *ex parte* motion to reopen GOG's bankruptcy proceeding, but GOG did not amend its schedules to account for its claims against the defendant or for the valuation of those "assets." On February 22, 2011, the bankruptcy court granted GOG's motion. On March 17, 2011, the Court allowed both of the plaintiffs' trustees to intervene in this suit.

### III.    Contentions of the Parties

#### A.    The Defendant's Contentions

The defendant contends that the plaintiffs lack standing because their claims against the defendant became assets of the plaintiffs' bankruptcy estates. The defendant maintains that, even if standing exists, the plaintiffs and their trustees are judicially estopped from pursuing this action because the plaintiffs hid their claims from the bankruptcy court. The defendant also avers that Imus is barred from pursuing this action by the doctrine of *res judicata*. Alternatively, the defendant contends that, if this case is allowed to proceed, the plaintiffs should be judicially

estopped from recovering any proceeds from their claims. The defendants also object to one of the plaintiffs' exhibits.[3]

### B. The Plaintiffs' Contentions

The plaintiffs assert claims for: (1) breach of contract; (2) trademark infringement; (3) federal unfair competition; (4) false advertising; and (5) violation of the Texas Deceptive Trade Practices Act. They claim that their trustees, as representatives of their bankruptcy estates, have standing to bring these claims. The plaintiffs deny hiding their claims from the bankruptcy courts, and they aver that the continuance of their bankruptcy proceedings mooted the judicial estoppel issue. They also maintain that the doctrine of *res judicata* does not apply to Imus' claims. The plaintiffs seek a preliminary injunction, damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## IV. Standard of Review

A defendant may to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Moreover, in light of Federal Rule of Civil

---

[3] Specifically, the defendant objects to a letter proffered by the plaintiffs from Imus to her Chapter 13 trustee on April 22, 2010. *See* [Docket Entry 21, Exh. A]. The letter is unsigned, unauthenticated, and there is no indication that Imus ever sent it or that her trustee received it. Further, it is not a sworn disclosure of her assets made of public record and upon which her trustee or creditors relied. Accordingly, the Court sustains the defendant's objection.

Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Twombly*, 550 U.S. at 555). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly* at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'-- 'that the pleader is entitled to relief.'" *Ashcroft* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly* at 563 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)); *see also, Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

**V.     Analysis and Discussion**

The Court grants the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), based on the doctrine of judicial estoppel. The plaintiffs may not bring suit

because they lack standing. The plaintiffs' intervening trustees may not bring suit because they are judicially estopped from doing so. The plaintiffs did not involve their bankruptcy trustees in this suit until nearly three years after filing for bankruptcy, and only after the defendant filed the present motion. Furthermore, to date, GOG has presented the Court with no evidence that it ever fully disclosed its current claims as assets to its creditors or the bankruptcy court. The plaintiffs have missed their opportunity to timely assert these claims, and the Court will not reward what is – at best – a lack of diligence.

Each of the plaintiffs' asserted causes of action derive from the defendant's letter of October 1, 2007, and thus all of the plaintiffs' claims existed before the plaintiffs filed their bankruptcy petitions. Indeed, the plaintiffs' complaint avers that they "lost a substantial amount of profits due to [the defendant's] actions leading to Imus' Chapter 13 Bankruptcy, divorce and emotional distress." And yet, when completing the required lists of "[o]ther contingent and unliquidated claims of every nature" in their sworn bankruptcy filings, neither plaintiff indicated any claim against the defendant. Nor did Imus indicate any claim against the defendant even when she amended her petition on February 24, 2009. Both plaintiffs neglected to assert these claims even though they both remembered to seek discharge of their $50,945.00 debt to the defendant in those same bankruptcy filings.

As to the plaintiffs, the parties agree that the plaintiffs lack standing to bring their claims, but they disagree as to whether the plaintiffs' intervening trustees can bring those same claims on behalf of the bankruptcy estates. Each of those claims existed before the plaintiffs filed their bankruptcy petitions. All of a debtor's property, including existing causes of action, becomes assets of her bankruptcy estate at the time that she files her bankruptcy petition. 11 U.S.C. § 541(a)(1). This rule is applied to both Chapter 7 and Chapter 13 proceedings. *See Wright v.*

*Guess*, 2010 U.S. Dist. LEXIS 5532, at *2-3 (D.S.C. January 25, 2010). Accordingly, that debtor loses standing to pursue those pre-petition claims, and any such lawsuit must be dismissed for lack of subject matter jurisdiction. *See Wright*, 2010 U.S. Dist. LEXIS 5532, at *2-3.

As to the plaintiffs' trustees, the Court determines that they are judicially estopped from asserting the plaintiffs' pre-petition claims. It is true that the plaintiffs' pre-petition claims are assets of the bankruptcy estate, and that the trustees became the bankruptcy estates' representatives with exclusive standing to assert the estates' claims. 11 U.S.C. §§ 323, 541(a)(1). However, in the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

"Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988), *cert. denied*, 528 U.S. 1117 (2000)). The Fifth Circuit has determined that "[a] court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe*, 412 F.3d at 600 (citing *In re Coastal Plains*, 179 F.3d at 206-07).

Those three elements are satisfied here, because "the trustee stands in the shoes of the debtor." *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001) (internal citation omitted). If the Court found that these three elements were not satisfied, it would be tacitly encouraging debtors to game the bankruptcy system. First, the plaintiffs' trustees are now trying to assert pre-petition

claims that are inconsistent with the plaintiffs' prior bankruptcy filings. Second, the plaintiffs convinced the bankruptcy court to accept their prior legal positions. Third, the documented correspondence between the parties prior to the plaintiffs' bankruptcy filings indicates that the plaintiffs did not inadvertently omit their pre-petition claims against the defendant.[4] Therefore, the trustees, standing in the plaintiffs' shoes, are judicially estopped from asserting the plaintiffs' pre-petition claims. *See In re Segerstrom*, 247 F.3d at 224.

Moreover, "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal on that undisclosed asset." *Jethroe*, 412 F.3d at 600. "The rationale for decisions invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *In re Coastal Plains*, 179 F.3d at 208 (internal punctuation omitted) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 104 (S.D.N.Y. 1996)).

In addition, allowing the trustees to continue this litigation would not materially advantage the plaintiffs' creditors. Those creditors would have little hope of recovery from the bankruptcy estates, because their recovery would be contingent upon payment of the potentially substantial administrative expenses caused by this belated litigation. Further, because the plaintiffs' bankruptcy proceedings occurred years ago, it is likely that their creditors have

---

[4] Debtors are required to make full and complete disclosures of their assets when filing for bankruptcy. 11 U.S.C. §§ 521(a). The plaintiffs terminated their licensing agreement with the defendants on January 3, 2008, prior to filing their bankruptcy petitions. This letter prevents the plaintiffs from arguing that they lacked knowledge of their current claims.

pursued alternative collection strategies.[5] Accordingly, the Court grants the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]

## VI. Conclusion

Based on the foregoing discussion, the Court grants the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

It is so **ORDERED**.

SIGNED at Houston, Texas this 7th day of April, 2011.

_____
Kenneth M. Hoyt
United States District Judge

---

[5] Nor does reopening Chapter 7 proceedings cast the plaintiffs in a good light. *See Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003) (noting that the debtor's "attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds."); *see also*, *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) ("Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.")

[6] Because the Court finds the doctrine of judicial estoppel sufficient to grant the defendant's motion to dismiss, the Court need not address the applicability of the doctrine of *res judicata*.